UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH J. PEREZ,

    Plaintiff,

v.                                                  CASE NO. 8:14-cv-2264-T-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Plaintiff alleges she became disabled on January 22, 2011. (Tr. 17, 35.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on January 14, 2013, at which Plaintiff was represented by an attorney. (Tr. 32-57.) The ALJ issued a decision finding that Plaintiff was not disabled from January 22, 2011 through February 21, 2013, the date of the decision.[2] (Tr. 17-26.)

In reaching the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since January 22, 2011. (Tr. 19.) In addition,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 17, 18.)

[2] Plaintiff had to establish disability on or before September 30, 2011, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 17.)

the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, depression, and mood disorder. (Tr. 20.)  Further, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations, such as the ability to perform "routine, repetitive tasks in an environment with limited work stress and limited contact with the public."  (Tr. 21.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from January 22, 2011 through February 21, 2013.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

### I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary

result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues that the ALJ's RFC assessment and credibility determination are not supported by substantial evidence because the ALJ failed to consider all the evidence in the record with respect to her mental impairments, misstated the evidence, and minimized the severity of her symptoms based on the change in her diagnosis from depression to mood disorder. In addition, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence to the extent it was based in part on the ALJ's determination that Plaintiff's unsuccessful work attempts in 2011 at Denny's (for four days) and Subway (for four days),[3] showed that she was capable of performing SGA.

---

[3] In some parts of her brief, Plaintiff states that she worked at Denny's and Subway for four *weeks*, rather than four days, in 2011. However, given that Plaintiff's earnings totaled only $325.81 from both jobs, the Court accepts Plaintiff's earlier reference to four *days* at each job as more accurate.

The Court agrees with Plaintiff that the ALJ failed to consider all relevant evidence in the record with respect to her mental impairments, misstated the evidence, and seemed to minimize the severity of her symptoms based on the changed diagnosis.[4]  First, the ALJ did not discuss or acknowledge Plaintiff's treatment records from Mental Health Care, Inc. after the August 2011 visit.  This is significant because these records tend to show deterioration in Plaintiff's condition compared to the earlier records that the ALJ considered, and tend to support Plaintiff's claim of disability.  *See Lord v. Apfel*, 114 F. Supp. 2d 3, 13 (D.N.H. 2000) (stating that although the Commissioner is not required to refer to every piece of evidence in his decision, the Commissioner may not ignore relevant evidence, particularly when it supports the claimant's position); *Meek v. Astrue*, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) ("Although an ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision . . . . Rather, the judge must explain why significant probative evidence has been rejected.") (internal citations and quotation marks omitted).

For example, in November 2011, Plaintiff was seen by Dr. Nirmala Apte, a psychiatrist at Mental Health Care, Inc., who asked Plaintiff's brother to join the

---

[4] With respect to the changed diagnosis, the ALJ stated: "Although [Plaintiff's] GAF[] scores are fairly low, her diagnoses [sic] changed from depression to a mood disorder."  (Tr. 24.)  The ALJ does not explain how this change may have impacted the severity of Plaintiff's symptoms.

4

interview and to monitor Plaintiff's medications because Plaintiff was not sure what medications she was taking. (Tr. 480.) Plaintiff's brother informed Dr. Apte that the family kept a watch on her, made sure she was not keeping the stove on, and watched for her safety. (*Id.*) At the time of the interview, Plaintiff stated: "I'm getting confused, I burn my food, I don't remember things, when I go out, I get lost, now I'm going to move in with my daughter." (*Id.*) She also reported that "she constantly experiences anxiety when she has an appointment[,] . . . can't sleep the day before; it's just too much for her like it's a task," that "at times she feels that she does not want [to] live anymore," and "she doesn't believe that her medication is working well and reports that she is still feeling depressed and crying." (Tr. 482.) Dr. Apte observed that Plaintiff was tearful and oriented to three spheres. (Tr. 480.) Plaintiff was diagnosed with mood disorder NOS and post-traumatic stress disorder. (Tr. 484-85.) Dr. Apte asked Plaintiff's brother to provide supervision for Plaintiff, to make sure she is taking her medications, to take the rest of the medications away from her if she has any at home, and to take her to the Crisis Center, if needed. (Tr. 480.)

On December 14, 2011, Plaintiff was again brought to the Mental Health Care, Inc. by her brother. (Tr. 479.) She was "crying uncontrollably," rocking back and forth and beating herself in the head with both of her hands as she began to describe what was going on. (*Id.*) Plaintiff reported feeling depressed, overwhelmed, confused at times, and stated she did not know how she was going

to make it. (*Id.*) Plaintiff's brother stated that none of his family members felt comfortable leaving Plaintiff alone, they always worried about her, and that although he was not sure if she would actually attempt to commit suicide, they were very concerned. (*Id.*) The treatment note provided:

> The patient was unable to state that she will not harm herself. She appears to be very hopeless right now. She made some references to the fact that she has given up and she has no desire to live anymore. . . . Therefore, the patient is not able to state that she is not suicidal. When I did discuss going to the Crisis Center, she says no and then she says . . . yes, but she is unable to contract for her safety at this time. Therefore, the program supervisor was made aware that the patient needed to be Baker Acted and the Plant City police was called and they made [sic] aware of patient's status.

(*Id.*) The record indicates that Plaintiff was discharged on December 16, 2011 and placed with a family member. (Tr. 477.)

Because there is no indication that the ALJ considered these records, which seem to suggest greater limitations than assessed by the ALJ, the Court cannot conclude that the ALJ's decision is supported by substantial evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'").

Further, it appears that the ALJ picked and chose parts of the record that supported his findings and, to some extent, misstated the evidence. For

example, although in his decision, the ALJ stated that during the August 2011 examination by Dr. Apte, Plaintiff "was oriented in all spheres" (Tr. 23), the treatment record does not include such a statement (see Tr. 450).  The treatment record actually provides that Plaintiff was "still having crying spells"; she was sad, tearful, depressed, and withdrawn; she had "difficulty with her daily functioning"; she was "hearing someone calling her name and telling her, 'You're ugly, you're stupid'"; and she was "not experiencing any improvement on her current medication.  (Tr. 450.)  Rather than consider these statements, the ALJ apparently focused on the remainder of the treatment record, which showed that Plaintiff was in contact with reality and had fair judgment and insight.  (Tr. 23.)

Similarly, when evaluating Dr. Annette Sanchez's treatment records, the ALJ stated that there was no indication of hallucinations.  (Tr. 24.)  This statement is contradicted by Dr. Sanchez's mental status examination, which showed that Plaintiff continued to have "visual hallucinations (seeing the image of her friend with massive burns as she saw her in the hospital, or someone passing by her) which she stated makes her anxious because it makes her wonder if she is losing her mind."  (Tr. 384.)

Based on the foregoing, the Court cannot conclude that the ALJ's decision is supported by substantial evidence.  Therefore, on remand, the ALJ will be directed to consider all relevant evidence.  In light of this conclusion and the possible change in the RFC, the Court need not address Plaintiff's remaining

arguments regarding credibility or SGA.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to: (a) consider all relevant evidence of record, explain the weight given to the evidence and the reasons therefor, (b) reconsider the RFC assessment, if necessary, and (c) conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

3.      Should this remand result in the award of benefits, pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, Plaintiff's attorney is **GRANTED** an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b).  Plaintiff's attorney shall file such a petition within **thirty (30) days** from the date of the Commissioner's letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney's fees.  *See* In re: *Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No. 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend

the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on February 9, 2016.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record